# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| RONNIE QUENTIN BROWN, ) | |
|     No. 415080, ) | |
| ) | |
|     Plaintiff, ) | No. 3:17-cv-00686 |
| ) | Judge Trauger |
| v. ) | |
| ) | |
| BRUCE WESTBROOKS, *et al.*, ) | |
| ) | |
|     Defendants. ) | |

## M E M O R A N D U M

Plaintiff Ronnie Quentin Brown, an inmate of the Riverbend Maximum Security Institution in Nashville, Tennessee, has filed a *pro se*, *in forma pauperis* complaint pursuant to 42 U.S.C. § 1983 against Warden Bruce Westbrooks, Tennessee Department of Correction (TDOC) Commissioner Tony Park, Assistant Commissioner of Operations Jason Woodall, f/n/u Fish, and Andrew Brown, alleging a violation of the plaintiff's federal civil rights. (Docket No. 1). The plaintiff seeks damages, injunctive relief, a change in his security classification, and the return of "good time" credits. (*Id.* at p. 4).

The plaintiff's complaint is before the court for an initial review pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(e)(2) and 1915A.

**I.**     **PLRA Screening Standard**

Under 28 U.S.C. § 1915(e)(2)(B), the court must dismiss any portion of a civil complaint filed *in forma pauperis* that fails to state a claim upon which relief can be granted, is frivolous, or seeks monetary relief from a defendant who is immune from such relief. Section 1915A similarly requires initial review of any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," *id.* § 1915A(a), and summary

dismissal of the complaint on the same grounds as those articulated in § 1915(e)(2)(B). *Id.* § 1915A(b).

The Sixth Circuit has confirmed that the dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), "governs dismissals for failure to state a claim under those statutes because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive scrutiny on initial review, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)).

Although *pro se* pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991), the courts' "duty to be 'less stringent' with *pro se* complaints does not require us to conjure up [unpleaded] allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted).

## II. Section 1983 Standard

The plaintiff brings his claims pursuant to 42 U.S.C. § 1983. Title 42 U.S.C. § 1983 creates a cause of action against any person who, acting under color of state law, abridges "rights,

privileges, or immunities secured by the Constitution and laws . . . ." To state a claim under § 1983, the plaintiff must allege and show two elements: (1) that he was deprived of a right secured by the Constitution or laws of the United States; and (2) that the deprivation was caused by a person acting under color of state law. *Tahfs v. Proctor,* 316 F.3d 584, 590 (6th Cir. 2003); 42 U.S.C. § 1983.

### III. Alleged Facts

The complaint alleges that, in December of 2016, the plaintiff was placed in "the hole" or segregation for a period of twenty days without explanation. During this time, the plaintiff wrote many grievances to various individuals trying to find out why he had been placed in segregation. According to the complaint, officer f/n/u McClure told the plaintiff that his grievances were "inappropriate" and other defendants laughed at the plaintiff.

On January 20, 2017, the complaint alleges that administrative hearing board members knocked on the door of the plaintiff's segregation cell. The plaintiff learned that he had been placed in segregation based on the word of a confidential informant who claimed that the plaintiff had possessed a steel rod or "ice pick" found in a utility closet. The plaintiff maintains that he has never possessed or seen the rod. His administrative hearing was held outside of his cell door. He asked to produce witnesses and other evidence, but was not permitted to do so. The plaintiff was then moved to "max" classification. He has written at least thirty-two letters to TDOC officials asking for help as the plaintiff believes his due process rights were violated by the sham administrative hearing. (Docket No. 1 at pp. 3-10).

### IV. Analysis

#### A. Section 1983 official capacity claims for monetary damages

The plaintiff's § 1983 claims for monetary damages against the defendants in their official

3

capacities are barred by the Eleventh Amendment. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 64, 71 (1989). Thus, those claims must be dismissed.

### B. Section 1983 failure to respond to grievances claims

Some of the plaintiff's § 1983 claims are premised on a defendant's response, or lack of response, to the plaintiff's grievances and/or complaints. Although the plaintiff may feel that his grievances were not taken seriously or handled properly, a plaintiff cannot premise a § 1983 claim on allegations that an institution's grievance procedure was inadequate and/or unresponsive because there is no inherent constitutional right to an effective grievance procedure in the first place. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983)(overruled in part on other grounds by *Sandin v. Conner*, 515 U.S. 472 (1995)); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994); *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991). Since a prisoner does not have a constitutional right to an effective or responsive grievance procedure, the plaintiff's claims based on any defendant's failure to respond to plaintiff's grievances do not state a claim upon which relief can be granted. These claims will be dismissed.

### C. Due process claims

The plaintiff claims that the defendants' actions violated his due process rights under the Fourteenth Amendment. A Fourteenth Amendment procedural due process claim depends on the existence of a constitutionally cognizable liberty or property interest with which the state has interfered. *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989); *Pusey v. City of Youngstown*, 11 F.3d 652, 656 (6th Cir.1993).

The filing of false disciplinary charges against an inmate does not constitute a constitutional violation redressable under § 1983. *Person v. Campbell*, No. 98-5638, 1999 WL 454819, at *1 (6th

Cir. June 21, 1999)(citation omitted). A prison disciplinary proceeding does not give rise to a protected liberty interest unless the restrictions imposed constitute an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Confinement to segregation, the loss of privileges, fines, and restitution do not constitute an atypical and significant hardship in the context of prison life. *See Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir.1986). *See Upshaw v. Jones*, 2015 WL 348626, at *4 (W.D. Tenn. Jan. 26, 2015)(finding no violation of inmate's due process rights when corrections officer assigned inmate to segregation as punishment prior to inmate's disciplinary hearing).

The complaint also alleges that the plaintiff's punishment resulted in the loss of good time or sentencing credits. However, Tennessee law and regulations do not create a right to earn sentence credits. *See Tenn. Code Ann*. § 41-21-236(a)(2)(2014). Thus, there is no right to due process in connection with segregation, transfer, or classification decisions that have such an uncertain effect on a particular inmate's release. *See Frazier v. Hesson*, 40 F. Supp.2d 957, 964, 966 (W.D. Tenn. 1999)(explaining that *Heck* and *Balisok* "reinforce the Court's conclusion that neither confinement to segregation, transfers, nor increased security classifications constitute custody because they do not directly lengthen the duration of confinement" and, further, "In Tennessee . . . the effect of sentence credits is only to affect a release eligibility date, which is nothing more than a unilateral expectancy. It is thus devoid of due process protections.").

As a result, it does not appear that relief is available to the plaintiff pursuant to § 1983 for the loss of any good time credits. Consequently, the plaintiff is not entitled to injunctive relief on this claim, and this claim must be dismissed.

**V.     Conclusion**

As set forth above, the complaint fails to state a claim upon which relief can be granted. Thus, all claims must be dismissed. 28 U.S.C. § 1915A.

An appropriate order will be entered.

_____
Aleta A. Trauger
United States District Judge